Filed 7/9/26  Haining v. Gratitude Lodge CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CLINTON HAINING et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> GRATITUDE LODGE LLC, <br><br> Defendant and Respondent. | G064850 <br><br> (Super. Ct. No. 30-2023-01340666) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly A. Knill, Judge. Affirmed.

Neale & Fhima, Aaron D. Fhima; Joseph S. Socher for Plaintiffs and Appellants.

Foran Glennon, Gabriel Ullrich and Justin Berg for Defendant and Respondent.

This case comes to us after the trial court sustained a demurrer without leave to amend and dismissed a negligence complaint filed by a

couple against a private substance abuse treatment facility. The couple, Clinton "Travis" Haining and his wife, Jennifer (collectively, the Hainings),[1] lived in the vicinity of the facility, Gratitude Lodge LLC, and one night were awakened by the sounds of an intruder. In terror, Travis shot—and to our understanding, killed—the advancing intruder, who did not respond to Travis's demands that he identify himself, allegedly causing the Hainings emotional distress. Only afterward did the couple discover the man was a resident in treatment at Gratitude Lodge who had left the facility in the throes of a mental health episode. The court sustained the demurrer because it found Gratitude Lodge owed no duty to the Hainings with respect to the intruder.

Because we find the harm to the Hainings was not reasonably foreseeable, we agree Gratitude Lodge did not owe the Hainings a duty and affirm.

STATEMENT OF FACTS[2]

Gratitude Lodge operated an addiction treatment facility providing inpatient detoxification and rehabilitation services in a small-group environment. The facility was located 260 feet away from the Hainings' residence.

---

[1] We refer to the Hainings individually by their first names for purposes of clarity and intend no disrespect in doing so.

[2] The facts we recite are taken from the Hainings' operative complaint. "On appeal after a sustained demurrer, the court must assume the truth of the factual allegations of the complaint." (*Beauchene v. Synanon Foundation, Inc.* (1979) 88 Cal.App.3d 342, 344 (*Beauchene*).)

2

Henry Lehr was admitted to the facility on August 23, 2021, for addiction treatment. At the time of his admission, he was going through withdrawal symptoms.

On the night of August 25, 2021, two days after Lehr arrived at Gratitude Lodge, staff members witnessed him having auditory and visual hallucinations of dogs and demons. Support staff from the facility transported him to the hospital, where he was diagnosed with hallucinations, "polysubstance abuse, opioid withdrawal, [alcohol] abuse[,] and marijuana use." He was discharged at 2:30 a.m. on August 26, 2021, and returned to Gratitude Lodge, where his hallucinations of dogs continued.

During this time, staff members asked Lehr whether he was okay. They told him, if he was not okay, he could be transported to College Hospital, which offers treatment for people under Welfare & Institutions Code section 5150, often referenced as an involuntary "section 5150 hold."[3] (See, e.g., *Jacobs v. Grossmont Hospital* (2003) 108 Cal.App.4th 69, 71–72.) A staff member recognized Lehr was not under the influence of a controlled substance but was experiencing a mental health episode. Staff members gave

---

[3] This statute, which is part of the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) provides in pertinent part: "When a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." (Welf. & Inst. Code, § 5150, subd. (a).)

him Ativan and Clonidine and requested sleep medication from the pharmacy.

Lehr's symptoms continued. He began talking with "'the devil,'" and attempted to perform an exorcism in his room. He hallucinated the pillows on the couch were breathing and was observed swatting at them. Staff members turned off the white noise machine in his room as he indicated he believed spirits were communicating with him through it.

Lehr went downstairs and asked for a knife to kill a demon he claimed to have caught. He then told staff the house was threatening and decaying from the inside and they would die if they stayed there. He asked for his belongings so he could leave.

Staff members attempted to stall Lehr from leaving while calling the clinical director of the facility. They were unable to reach the clinical director, so they attempted to call the facility manager. By the time they were finally able to reach the facility manager at approximately 4:13 a.m., Lehr had already left the facility. Thirteen minutes after they spoke to the facility manager, staff members called 911.

The Hainings were asleep in their bed when Jennifer awoke, having heard something. She woke Travis and told him she thought someone was in the house. After they heard a crash, Travis told Jennifer to stay back and retrieved his pistol.

Travis yelled, "'Who is it!?'" multiple times. (Capitalization omitted.) Gun in hand, he proceeded to the top of the stairs. The front door appeared to be closed, but the doorframe was damaged and there were noises coming from downstairs.

Just then, Travis saw someone running. The intruder was Lehr, who had broken into the Hainings' home. Lehr rounded the corner from the

4

hallway to the staircase and began running up the stairs toward Travis. Terrified, Travis continued to yell, "Who is it" and "Stop!" as Lehr continued to come toward him. (Capitalization omitted.) Without hearing a response, and not knowing if there was more than one intruder, Travis fatally shot Lehr.

Jennifer called 911 at approximately 4:26 a.m. to report that an intruder had kicked in their front door and her husband had shot him at approximately 4:24 a.m. The Hainings have been coping with severe mental and emotional distress in the aftermath of this incident.

PROCEDURAL BACKGROUND

The Hainings filed a complaint against Gratitude Lodge, alleging a single cause of action for negligence. The cause of action was based on Gratitude Lodge's alleged duty to exercise reasonable care to prevent Lehr from engaging in dangerous behavior toward others. The Hainings alleged Gratitude Lodge could have sent Lehr to College Hospital before the shooting occurred, where he could have been evaluated for a Welfare & Institutions Code section 5150 hold. They alleged Gratitude Lodge did not do so because it feared losing Lehr's $20,000 fee. They further alleged Gratitude Lodge was cited by the Department of Health Care Services for its failure to refer Lehr to a higher level of care that might have prevented this unfortunate incident.

Gratitude Lodge demurred, arguing the lawsuit was barred by *Beauchene, supra*, 88 Cal.App.3d 342, which held a private rehabilitation institution had no duty to protect the public from a criminal probationer who left the premises and went on a violent spree. Gratitude Lodge further argued leave to amend should not be granted as there was no statutory or other legal precedent imposing a duty in this context.

The trial court sustained the demurrer and gave the Hainings one opportunity to amend. The Hainings filed a first amended complaint, which added more detail around the legal theories being alleged, as well as a new theory that Gratitude Lodge undertook to provide care and services to Lehr, and Lehr depended on Gratitude Lodge to refer him to the appropriate level of care.[4]

Again, Gratitude Lodge demurred, and this time the trial court sustained the demurrer without leave to amend. The Hainings timely appealed from the court's signed order of dismissal of the lawsuit.

DISCUSSION

The Hainings argue the trial court improperly rejected their special relationship and negligent undertaking theories of liability, and instead sustained the demurrer based on inapplicable authority. We conclude the demurrer was properly sustained without leave to amend.

I.

STANDARDS OF REVIEW

"We apply two standards of review on appeal from a judgment of dismissal after a demurrer is sustained without leave to amend. [Citation.]

"First, we review the operative complaint 'de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law.' [Citations.] We give the complaint a reasonable interpretation and treat the demurrer as admitting all material facts properly pleaded that are not inconsistent with other

---

[4] The Hainings' trial counsel referred to this theory below as a negligent undertaking theory.

6

allegations, exhibits, or judicially noticed facts. [Citations.] We need not accept as true, however, deductions, contentions or conclusions of law or fact. [Citations.]

"Second, we determine 'whether the trial court abused its discretion by sustaining the demurrer without leave to amend.' [Citation.] Abuse of discretion is established when "'there is a reasonable possibility the plaintiff could cure the defect with an amendment.'"" (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292.)

## II.

### GOVERNING LEGAL PRINCIPLES

The law imposes a general duty upon all conduct. "In general, each person has a duty to act with reasonable care under the circumstances." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619 (*Regents*); see Civ. Code, § 1714, subd. (a).)

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citation.] Recovery for negligence depends as a threshold matter on the existence of a legal duty of care. [Citation.] [¶] Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if "'the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" [Citation.] Whether a duty exists is a question of law to be resolved by the court." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).)

"In a case involving harm caused by a third party, a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a 'special relationship' with either the victim or the person who created the harm. [Citations.] [¶] A special relationship

7

between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant, while a special relationship between the defendant and the dangerous third party is one that 'entails an ability to control [the third party's] conduct.' [Citation.] Relationships between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests, are all examples of special relationships that give rise to an affirmative duty to protect. [Citations.] The existence of such a special relationship puts the defendant in a unique position to protect the plaintiff from injury. The law requires the defendant to use this position accordingly." (*Brown, supra*, 11 Cal.5th at pp. 215–216.)

In *Brown, supra*, 11 Cal.5th at page 209, the Supreme Court clarified "whether to recognize a duty to protect is governed by a two-step inquiry." The court explained: "First, the court must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect. Second, if so, the court must consult the factors described in *Rowland* [*v. Christian* (1968) 69 Cal.2d 108] to determine whether relevant policy considerations counsel limiting that duty." (*Ibid.*)

## III.

### THE FIRST AMENDED COMPLAINT DOES NOT SHOW GRATITUDE LODGE OWED A DUTY TO CONTROL LEHR

In their opening brief, the Hainings argue they "adequately pleaded a theory of liability based on the special relationship between Lehr and Gratitude Lodge" giving rise to a duty to control Lehr. They do not argue they pleaded the existence of a special relationship between Gratitude Lodge and themselves and as such, they had a right to expect protection from

8

Gratitude Lodge. Instead, they assert in their opening brief "this is a duty to control—not a duty to warn" case.

"[A] duty to control presupposes an *ability* to control 'such that "if exercised, [it] would meaningfully reduce the risk of the harm that actually occurred."' [Citations.] The ability (and hence concomitant duty) to control may be anchored in: (1) control imparted by virtue of the nature of the relationship itself (as is the case with a parent-child or employer-employee relationship) [citations]; or (2) control imparted by virtue of control over 'the environment' where the plaintiff is injured (as is the case with schools being able to control students on campus)." (*Shalghoun v. North Los Angeles County Regional Center, Inc.* (2024) 99 Cal.App.5th 929, 945–946.)

The Hainings have not cited any post-*Brown* authority supportive of its position that a provider of residential drug rehabilitation services such as Gratitude Lodge, simply by virtue of its role of providing such services, has an ability and concomitant duty to control its clients. Instead, the Hainings contend *Poncher v. Brackett* (1966) 246 Cal.App.2d 769 and *Bragg v. Valdez* (2003) 111 Cal.App.4th 421 are applicable here. However, these cases are inapt. In *Poncher v. Brackett, supra*, 246 Cal.App.2d at page 773, the court recognized a duty by the defendant grandparents to control their minor grandson who they knew was likely to cause bodily harm to others if not controlled. The grandparents in that case were aware of similar acts committed by the grandson and that he was "'emotionally and psychiatrically disturbed.'" (*Id.* at p. 770, fn. 1.) In addition, public officials had warned the grandparents as to the grandson's potential danger to the public. (*Ibid.*)

Here, the first amended complaint does not allege Gratitude Lodge had the ability to control Lehr, who was a voluntary resident at Gratitude Lodge. The complaint also does not allege Lehr had any history of

violence or was otherwise dangerous. Consequently, there is no basis on this record to conclude Gratitude Lodge had a duty to control Lehr with respect to the Hainings.

In *Bragg v. Valdez, supra*, 111 Cal.App.4th at pages 430–432, the court considered whether a treating psychiatrist owes a duty to warn or protect third parties injured by the psychiatrist's patient. The plaintiff in *Bragg* alleged the treating psychiatrist was negligent in releasing the patient who then killed an elderly woman. (*Id.* at p. 427.) In finding the psychiatrist may be liable to a patient and any person the plaintiff injured, the *Bragg* court considered the fact the patient had been involuntarily committed, assaulted a security officer, was placed in emergency physical restraints, and made "serious threats of physical violence against third parties." (*Id.* at pp. 425, 426.) The first amended complaint in this case alleged Lehr voluntarily sought out services at Gratitude Lodge's "four-patient luxury detox and addiction facility" for addiction treatment. It did not allege Gratitude Lodge had any authority to restrict Lehr's movements or those of any of its clients at the facility. There are no allegations the facility was in lockdown or in any way restricted its clients' comings and goings vis-á-vis the facility. Given these factual distinctions as well as the fact, as discussed *ante*, that the Hainings do not allege a failure to protect but rather a failure to control, we find the *Bragg* case inapplicable here.

## IV.
### EVEN IF WE ASSUME GRATITUDE LODGE HAD A DUTY TO CONTROL, THE *ROWLAND* FACTORS COUNSEL AGAINST IMPOSING SUCH A DUTY HERE

In *Rowland, supra*, 69 Cal.2d at page 113, the Supreme Court set forth a list of factors courts must consider and weigh in determining whether it should impose a duty in the context of a special relationship. These

10

considerations are "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Ibid.*)

These factors "fall into two categories. The first group involves foreseeability and the related concepts of certainty and the connection between plaintiff and defendant. The second embraces the public policy concerns of moral blame, preventing future harm, burden, and insurance availability." (*Regents, supra*, 4 Cal.5th at p. 629.)

"'The most important [*Rowland*] factor to consider in determining whether to create an exception to the general duty to exercise ordinary care . . . is whether the injury in question was *foreseeable.*' [Citations.] In examining foreseeability, 'the court's task . . . "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed."'" (*Regents, supra*, 4 Cal.5th at p. 629.) Here, the foreseeability factors do not weigh in favor of imposing a duty on Gratitude Lodge.

Even if we assume Gratitude Lodge had a duty to control Lehr, the question then is not whether Gratitude Lodge could have reasonably foreseen the Hainings' emotional injury but rather whether the type of harm the Hainings suffered was reasonably foreseeable if Gratitude Lodge failed to control a resident at their facility. The Hainings do not allege Lehr had any

11

criminal history, let alone any history of residential burglaries or trespass. Additionally, the Hainings do not assert Gratitude Lodge had the ability to control Lehr. Lehr entered the facility on a voluntary basis and there are no allegations Gratitude Lodge had the authority to restrict Lehr's movements. Given the facts here, we cannot say it is reasonably foreseeable that, if Gratitude Lodge had control over Lehr and failed to exercise such, Lehr would, after leaving the facility, break into another's home, and as a result of this break in, be killed by the homeowner.

As to the additional foreseeability factors under *Rowland*, we assume, since this is an appeal involving a demurrer, the Hainings suffered severe mental injury because of the incident. Yet, "'[g]enerally speaking, where the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury from the category of negligent conduct at issue is likely to be deemed unforeseeable. Conversely, a closely connected type of injury is likely to be deemed foreseeable.'" (*Regents, supra*, 4 Cal.5th at pp. 630–631.) The Hainings' injury occurred after Lehr left the facility and only after Lehr unlawfully entered their home. The Hainings do not contend Gratitude Lodge was on notice that Lehr was going to illegally enter their home or any home in the neighborhood. The emotional injury they incurred as a result of such conduct is not closely connected to Gratitude Lodge's failure to adequately care for and supervise Lehr.[5]

As for the public policy factors under *Rowland*, the Hainings argue these policy considerations weigh in favor of imposing a duty while Gratitude Lodge contends even if a duty existed, the policy factors would militate against such an imposition. To this end, the parties devoted much

[5] In reaching this conclusion, we do not in any way wish to minimize the trauma this incident likely created for the Hainings.

time in their briefing and at oral argument trying to distinguish or analogize the holdings in *Beauchene, Cardenas v. Eggleston Youth Center* (1987) 193 Cal.App.3d 331, and *Rice v. Center Point, Inc.* (2007) 154 Cal.App.4th 949. These cases, however, predate the two-step analysis of duty discussed *ante* and set forth in *Brown, supra*, 11 Cal.5th 204. These cases also rely on specific legislative policies regarding treatment facilities for those involved in the criminal and juvenile justice systems. Notwithstanding this factual distinction, both parties agree there is a societal benefit to the availability/existence of facilities like Gratitude Lodge for addiction treatment.

On balance, given the foreseeability issues discussed *ante*, even if Gratitude Lodge had a duty to control Lehr, the *Rowland* factors weigh in favor of not imposing such a duty.

V.

NEGLIGENT UNDERTAKING

As an alternative source of duty, the Hainings allege the negligent undertaking doctrine applies to this case.

"As the traditional theory is articulated in the Restatement [Second of Torts, section 324A], a negligent undertaking claim of liability to third parties requires evidence that: (1) the actor . . . undertook, gratuitously or for consideration, to render services to another . . . ; (2) the services rendered were of a kind the actor should have recognized as necessary for the protection of third persons (plaintiffs); (3) the actor failed to exercise reasonable care in the performance of its undertaking; (4) the failure to exercise reasonable care resulted in physical harm to the third persons; and (5) either (a) the actor's carelessness increased the risk of such harm, or (b) the undertaking was to perform a duty owed by the other to the third

13

persons, or (c) the harm was suffered because of the reliance of the other or the third persons upon the undertaking." (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 613–614.)

Here, the services rendered by Gratitude Lodge were not of a kind necessary for the protection of third persons like the Hainings. The facility was providing inpatient drug rehabilitation and treatment services to its own clients. If anything, the treatment services it was alleged to have negligently undertaken were for the protection of Lehr, not the residents of the neighborhood. The trial court did not err in rejecting this basis for duty.

VI.

THE TRIAL COURT DID NOT ERR BY DENYING LEAVE TO AMEND

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

"Absent an effective request for leave to amend the complaint in specified ways, an abuse of discretion can be found "'only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case.""" (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.)

The Hainings do not argue in the trial court, and have not argued on appeal, much less demonstrated in either court, there is a reasonable possibility the defects in the pleading of their claim against Gratitude Lodge

14

in the complaint can be cured by further amendment. We therefore conclude the demurrer to the complaint was properly sustained without leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed. Gratitude Lodge to recover its costs on appeal.


MOTOIKE, P. J.

WE CONCUR:


DELANEY, J.


SCOTT, J.